729 F.2d 966
 4 Soc.Sec.Rep.Ser. 278, Medicare&Medicaid Gu 33,664
Evelyn RANDALL; Emma Matthews; Archie Morse; Minnie
Miller, by her next friend, Viola Liskey, on behalf of
themselves and all others similarly situated, and Maggie
Lamb; Pompey Wingo; Rachel Wingo and William E. Smith, Appellees,
v.
William L. LUKHARD, Comm. of the Commonwealth of VA Dept. of
Welfare; Dr. James B. Kenley, Comm. of Health for the
Commonwealth of VA, and Dr. Freeman C. Hays, Dir. of VA
Medical Assistance Program, Appellants,
and
Richard Schweiker, Sec. H & H Services, Amicus Curiae.
Gray Panthers, Amicus Curiae.
Evelyn RANDALL; Emma Matthews; Archie Morse; Minnie
Miller, by her next friend, Viola Liskey, on behalf of
themselves and all others similarly situated, and Maggie
Lamb; Pompey Wingo; Rachel Wingo and William E. Smith, Appellants,
v.
William L. LUKHARD, Comm. of the Commonwealth of VA Dept. of
Welfare; Dr. James B. Kenley, Comm. of Health for the
Commonwealth of VA and Dr. Freeman C. Hays, Dir. of VA
Medical Assistance Program, Appellees,
and
Richard Schweiker, Sec. H & H Services, Defendant.
Gray Panthers, Amicus Curiae.
 Nos. 82-1773, 82-1774.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 5, 1983.
Decided March 12, 1984.
 
 Herbert L. Beskin, Charlottesville-Albemarle Legal Aid Soc., Charlottesville, Va. (V. Anne Edenfield, Legal Aid Soc. of Roanoke Valley, Roanoke, Va., on brief), for appellants in 82-1774 and for appellees in 82-1773.
 Robert T. Adams, Asst. Atty. Gen., Richmond, Va. (Gerald L. Baliles, Atty. Gen., John A. Rupp, Sr. Asst. Atty. Gen., Richmond, Va., on brief), for appellants in 82-1773 and for appellees in 82-1774.
 Gill Deford, Nat. Senior Citizens Law Center, Los Angeles, Cal., on brief, for amicus curiae, Gray Panthers.
 Before WINTER, Chief Judge, and RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE, ERVIN, and CHAPMAN, Circuit Judges, Sitting In Banc.
 HARRISON L. WINTER, Chief Judge.
 
 
 1
 Before us on rehearing in banc are the issues decided by a divided panel in Randall v. Lukhard, 709 F.2d 257 (1983).[1] The majority ruled that:
 
 
 2
 1. Virginia's former "transfer of assets" eligibility rules for entitlement to medicaid benefits was invalid from January 1, 1972 until June 30, 1981 because it conflicted with federal law;
 
 
 3
 2. The burden of proof provisions to overcome presumptive ineligibility for medicaid benefits arising from a transfer of property of Virginia's new "transfer of assets" eligibility rule were invalid because they conflicted with federal law;
 
 
 4
 3. Virginia's new "transfer of assets" eligibility rule, aside from the invalid burden of proof provisions, could be applied to persons whose applications for medicaid were filed before July 1, 1981 and processed on or after July 1, 1981 and to all redeterminations of eligibility made on or after July 1, 1981; and
 
 
 5
 4. With a modification of the notice approved by the district court, Virginia was obliged to give notice to medicaid claimants who applied for benefits from April 24, 1978 through June 30, 1981 and who were denied benefits because of transfers made before July 1, 1979, of their possible right to state administrative or state judicial remedies.
 
 
 6
 Accordingly, we affirmed in part and reversed in part the judgment of the district court, 536 F.Supp. 723, and remanded the case for further proceedings.
 
 I.
 
 7
 On rehearing we adopt holdings numbers 1, 3 and 4 (as summarized above) for the reasons expressed in the majority panel opinion. As to those issues, we adopt the majority panel opinion as the opinion of the in banc court.
 
 
 8
 We conclude, however, that the burden of proof provisions to overcome presumptive ineligibility for medicaid benefits arising from a transfer of property under Virginia's new "transfer of assets" eligibility rule do not conflict with federal law and are not therefore invalid. Our reasons are set forth in the following section of this opinion.
 
 II.
 
 9
 As pointed out in the majority panel opinion, Id. 261-62, in December 1980 the Boren-Long Amendment was signed into law. Pub.L. No. 96-611, 94 Stat. 3567 (1980). The Amendment, inter alia, created a transfer of assets eligibility rule for the Supplementary Security Income (SSI) program and authorized the states to adopt a similar transfer of assets eligibility rule for their medicaid programs. 42 U.S.C. Secs. 1382b(c) and 1396a(j). The language with which we are concerned is that contained in Sec. 1382b(c)(2), which in pertinent part reads:
 
 
 10
 Any transaction ... shall be presumed to have been for the purpose of establishing eligibility for benefits or assistance under this chapter unless such individual or eligible spouse furnishes convincing evidence to establish that the transaction was exclusively for some other purpose. [emphasis added]
 
 
 11
 Section 1396a(j)(1) authorized the states to incorporate similar transfer of assets rules in their medicaid programs but that section provided:[2]
 
 
 12
 If the State plan provides for the denial of such assistance by reason of such disposal of resources, the State plan shall specify a procedure for implementing such denial which, except as provided in paragraph (2) [length of disqualification], is not more restrictive than the procedure specified in section 1382b(c) of this title.
 
 
 13
 Acting upon the authorization contained in the 1980 amendment, Virginia rewrote its manual with respect to the measure of proof necessary to overcome the disqualifying statutory presumption:
 
 
 14
 It will be the responsibility of the client to establish that such a transfer was not made in an effort to qualify for Medicaid or SSI. The client must provide objective evidence that the transfer was exclusively for another purpose. A subjective statement of intent or ignorance of the property transfer provision is not sufficient. The client must provide evidence that other resources were available, at the time of transfer, to meet current and expected needs of that client, including cost of nursing home care. Virginia Manual sections 301.1 D.3.a. and 402.1 B.3.a.
 
 
 15
 The state rule requires that: a presumptively ineligible claimant must provide "objective" evidence that he transferred assets exclusively for a purpose other than to establish medicaid eligibility; he cannot rely solely on a subjective statement of intent or ignorance of the law; and he must show that at the time of the transfer there were other assets available to meet his current and expected medical needs. The precise issue before us is whether those requirements conflict with the federal standard of "convincing evidence" to establish that the transfer was not exclusively to create eligibility. The district court ruled that there was no conflict and we agree.
 
 
 16
 The standard prescribed by Sec. 1382b(c)(2) has been administratively construed by the Department of Health and Human Services in A12505.S of the SSI Claims Manual (revised as of October, 1983). The criteria identified seem to indicate that something more than merely the claimant's unsupported statement is required. To like effect is the proposed regulation to be codified as 20 C.F.R. Sec. 416.1246(e). See 46 Fed.Reg. No. 204 51779 (October 22, 1981).
 
 
 17
 The contention of Evelyn Randall and the other plaintiffs that the Virginia standard conflicts with the federal standard reduces itself to the assertion that Virginia's requirement of "objective evidence" means documentary evidence and nothing in the federal standard of "convincing evidence", or the administrative interpretations of the federal standard, is this restrictive; hence the conflict. On the surface the argument is appealing and the majority panel opinion adopted it. That construction, however, is not required, and its incorrectness is made apparent by the post-decision brief filed by Virginia in connection with rehearing in banc. There, after quoting the current Virginia rule, Virginia asserts:
 
 
 18
 Nowhere in this language is there an exclusive requirement for documentary evidence; oral evidence is accepted. Objective evidence is simply that evidence which rational people agree is real or valid.... In short, "objective" is not tantamount to "documentary", and Virginia has never held otherwise.
 
 
 19
 We accept Virginia's description of the operation and effect of its regulation and conclude that it does not conflict with applicable federal law and hence is valid.
 
 III.
 
 20
 For the reasons set forth above and those contained in the portions of the majority panel opinion which we adopt, the judgment of the district court is affirmed in part and reversed in part and the case is remanded for further proceedings.
 
 
 21
 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 
 
 22
 MURNAGHAN, Circuit Judge dissenting.
 
 
 23
 In dissenting from the portion of the majority opinion that holds invalid, as in conflict with federal law, Virginia's former "transfer of assets" eligibility rules, certainly I join Judge Russell, who has said it very well in his terse dissenting opinion.
 
 
 24
 I wish also to express dissatisfaction with the majority's acceptance, at the expense of all adherence to true meaning, of a bureaucratic twisting of language appearing in the regulation purporting to interpret the statute. To disqualify an applicant for Medicaid from receipt of benefits under that program, it was proper for Virginia to take into account "income and resources ... determined in accordance with standards prescribed by the Secretary [of Health and Human Services], available to the applicant or recipient...." 42 U.S.C. Sec. 1396a(a)17. The Secretary's regulation limited consideration to "such income and resources as are actually available." 45 C.F.R. Sec. 248.21(a)(2)(i) (1972) (emphasis supplied).
 
 
 25
 The majority, I submit mistakenly, has opined that, in total disregard of responsibility to one's self or to one's fellow citizens, one, following the administrative interpretation of the statute, may reduce to mockery the clearly expressed congressional intention to impose a means test to judge qualification for Medicaid. In short, the majority seems to forget that it matters not one whit for us as judges whether Congress, in its legislative wisdom, acted prudently in imposing a means test. Anyone dastardly enough to deed away his house to children, a lady friend, or a male companion for the express and sole purpose of cheating the Government of its legal due emerges as unscathed, with full eligibility for Medicaid. Meanwhile, the would-be applicant with a modicum of decency and an unwillingness to sink to such immoral depths, or even with a lack of shrewdness sufficient to conceive a shady practice of the sort here presented, is left out in the cold, required to sell his house and to invade the proceeds before becoming entitled to Medicaid.
 
 
 26
 The arrangement appears to have been so open-ended that, on the basis of the approach taken by the majority, Scrooge, in the throes of terminal cancer, could disgorge his entire, and by no means insubstantial, fortune for any purpose, good, frivolous or evil, and then line up to sup at the public Medicaid trough. For me, Congress neither meant nor wrote to permit such a mischievous practice.
 
 
 27
 We all must agree that great latitude should be allowed an administrator in interpreting a statute confided to his safekeeping. Still, there is a line that may not be overstepped. A regulation saying "black" when Congress has provided that only white handkerchiefs may be utilized (perhaps because of perceived health threats from dyes commonly employed) will not be accorded "due deference," or, to say it otherwise, deference would not, in such an extreme case, be due. The statute does not attempt to confer on the Secretary the right to determine, substantively, what is or is not an item of income or a resource. The administrative discretion is limited to the purely procedural question of how to identify what is income or a resource as determined by the statutory standards. The broad authority inhering in the Secretary to interpret "available" recognized in Schweiker v. Gray Panthers, 453 U.S. 34, 43-44, 101 S.Ct. 2633, 2639-40, 69 L.Ed.2d 460 (1981) is not to be equated with total abdication by the legislative and judicial branches.
 
 
 28
 To the same effect is the consideration that a statutory amendment making pellucid the meaning of certain language in its application to a "transfer of assets" situation need not amount to a satisfaction with, or a concession as to the accuracy of, a different interpretation theretofore given the language that is being amended. Congress may equally well amend to display its dissatisfaction with the interpretation and to express its well-founded belief that the wrong meaning has, all along, been assigned. See SEC v. Sloan, 436 U.S. 103, 98 S.Ct. 1702, 56 L.Ed.2d 148 (1978) (mere reenactment of Sec. 12(k) of Securities Act of 1934 does not constitute congressional approval of administrative interpretation theretofore given that section); and Moore v. Harris, 623 F.2d 908 (4th Cir.1980) (1978 amendment to Black Lung Benefits Act, 30 U.S.C. Sec. 901 et seq., was designed to make unmistakable the intent of Congress that self-employed miners be eligible for benefits under the Act, notwithstanding prior administrative interpretation to the contrary). When Congress, in 1980, passed the Boren-Long Amendment, 42 U.S.C. Sec. 1382b(c), operating to give certain transfers of property a disqualifying effect when determining Medicaid eligibility, absent convincing evidence of a bona fide reason for the transfer (i.e., one not designed to establish or manufacture sham eligibility), it was merely stating that the earlier "actually available" regulation had been erroneously adopted, or at least erroneously construed.
 
 
 29
 Had Virginia been permitted to deny benefits in such transfer situations, it is reasonable to assume that many transferees, like the spouses dealt with in Schweiker v. Gray Panthers, supra, would have returned, and therefore have rendered "actually available," the dissipated assets. In all likelihood, the transferees were on extremely good terms with the transferors in order for the transactions originally to have taken place at all. In short, the relevance of Schweiker v. Gray Panthers, supra, lies in the conclusion that assets of a spouse, though not directly in the hands of the applicant, could still be deemed to be available for purposes of the statute.
 
 
 30
 In bankruptcy law we do not permit such largely illusory transfers to deplete a debtor's estate. See Gray v. Snyder, 704 F.2d 709 (4th Cir.1983) (trustee in bankruptcy may avoid debtor's transfer of property interest if debtor "received less than a reasonably equivalent value in exchange for such transfer," 11 U.S.C. Sec. 548(a)(2)). While health concerns are more traumatic than financial ones, there are, nevertheless, additional considerations relating to the psychic health and well-being of the nation as a whole that also must be taken into account. Fair behavior of citizens to one another is the touchstone of a civilized state. Maintenance of fair treatment by individuals is a primary responsibility of government, including the courts, when decent action is not voluntary. A broad and general acceptance of court decisions, even by the losers, is a largely unmentioned marvel of the American system. Yet it should not be taken for granted. If it abates, so too do law and order in the most comprehensive sense of those terms. Misuse of the phrase in the political arena has led to slurs on "law and order," with a resulting curtailment of the broader meanings once given the terms. The mere fact of such misuse, however, does not itself constitute valid reason to dispose, impetuously in a swirl of soapy bathwater, of the concept as truly conceived and applied.
 
 
 31
 Law and order suffer a setback when fraud is held to have been congressionally authorized, if not, practically speaking, encouraged. Dissatisfaction with the judicial system and with the Congress, as it has now been held by the majority to have acted, may be expected to grow. Such developments were not, however, truly intended by Congress. The language of the statute does not compel the result reached by the majority. Indeed, if the Secretary had by regulation adopted what later became the language of the Boren-Long Amendment, the Secretary's interpretation would have been accepted by the Court. Both the Secretary and the Court would, in that case, be right. What the Secretary has done, however, is to defy logic and congressional intent. Consequently, his action and the affirming action of the majority are wrong.
 
 
 32
 Congress did not, looking at the matter in the round, intend to permit the raid on the Treasury sanctioned by the Secretary and approved by the majority. Congress meant that transfers, which, if not outright spurious, at least are deceptive in the extreme, should be deemed included in the category of "income and resources available to the applicant or recipient." Therefore, I dissent to that not-negligible extent from the opinion of the majority.
 
 
 33
 Circuit Judge DONALD RUSSELL, Circuit Judge WIDENER and Circuit Judge CHAPMAN has each authorized me to state that he joins me in dissent.
 
 
 34
 DONALD RUSSELL, Circuit Judge, dissenting.
 
 
 35
 I dissent from part one of the en banc opinion herein for the same reasons as stated in my dissent to part one of the panel opinion.
 
 
 36
 WIDENER and CHAPMAN, Circuit Judges, concur in this dissent.
 
 
 
 [1]
 The panel consisted of Winter, Chief Judge, Russell, Circuit Judge, and Fairchild, Senior Circuit Judge for the Seventh Circuit, sitting by designation. Judges Winter and Fairchild comprised the majority, with Judge Russell in dissent
 
 
 [2]
 We note that this provision was recodified by the Tax Equity and Fiscal Responsibility Act of 1982, P.L. 97-248 Sec. 132(c). An identical rule may now be found at 42 U.S.C. Sec. 1396p(c)(1) (1982)