830 F.2d 1283
 56 USLW 2249
 Anna R. DEEL; Onnie Dale Adcock, on her own behalf and as
mother and next friend of Tamatha Adcock and
Patricia Adcock, Plaintiffs-Appellants,
v.
William L. LUKHARD, Commissioner of Virginia Department of
Social Services; Otis R. Bowen, Secretary of
Health and Human Services, Defendants-Appellees.
 No. 86-1693.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 6, 1987.
Decided Oct. 9, 1987.
 
 Margaret Tuttle Schenck (Martin Wegbreit, Client Centered Legal Services of Southwest Virginia, Inc., on brief), for plaintiffs-appellants.
 Thomas James Czelusta, Asst. Atty. Gen. (Mary Sue Terry, Atty. Gen. of Va., on brief), Javier Arrastia (Beverly Dennis, III, Office of the Gen. Counsel, Dept. of Health & Human Services, John Alderman, E. Montgomery Tucker, on brief), for defendants-appellees.
 Before ERVIN and WILKINSON, Circuit Judges, and MOTZ, United States District Judge for the District of Maryland, sitting by designation.
 ERVIN, Circuit Judge:
 
 
 1
 Plaintiffs Anna R. Deel and Onnie Dale Adcock appeal the district court's grant of summary judgment in favor of the defendants in this case challenging Virginia's administration of the Aid to Families with Dependent Children program. Because we find that the plaintiffs were entitled to judgment as a matter of law on their cross-motion for summary judgment, we reverse the decision of the district court.
 
 I.
 
 2
 Anna R. Deel and Onnie Dale Adcock are Virginia residents who applied for benefits under the Aid to Families with Dependent Children ("AFDC") program, which is jointly administered by the federal and state governments. Deel and Adcock were denied benefits under Virginia's transfer of assets rule, which prohibits applicants from receiving AFDC benefits if they improperly transfer real or personal property without adequate compensation within two years of their applications for benefits. Deel was rendered ineligible for benefits because she transferred real property to her daughter and son-in-law for inadequate consideration two days before she applied for AFDC benefits. Adcock was rendered ineligible because she transferred her interest in a mobile home to her brother-in-law for less than adequate compensation shortly after she applied for AFDC benefits.
 
 
 3
 After being denied benefits, Deel filed suit against the Commissioner of the Virginia Department of Social Services and the Secretary of the United States Department of Health and Human Services in the United States District Court for the Western District of Virginia. Adcock was permitted to intervene in this suit as a party plaintiff. Deel and Adcock sued on behalf of themselves and a class consisting of all persons in Virginia who had been denied AFDC benefits pursuant to Virginia's transfer of assets rule. The complaint alleged that the transfer of assets rule constituted an invalid state-imposed eligibility requirement for receipt of AFDC benefits, in that it violated the Social Security Act's requirement that only those assets available to an applicant can be considered in determining eligibility for benefits. Deel and Adcock sought declaratory and injunctive relief.
 
 
 4
 The parties filed cross-motions for summary judgment. There were no disputed factual issues; the district court had only to decide the questions of law presented by the parties. The court granted summary judgment for the defendants, finding that Virginia's transfer of assets rule was valid and authorized under the Social Security Act. See Deel v. Lukhard, 641 F.Supp. 784 (W.D.Va.1986). In a subsequent order, the district court denied Deel and Adcock's petition for class certification. Deel and Adcock appeal the district court's grant of summary judgment in favor of the defendants and its denial of their petition for class certification.[1]
 
 II.
 
 5
 The AFDC program is a cooperative federal-state program pursuant to which states pay benefits to needy dependent children and their families so that needy dependent children may be cared for in their own homes. See 42 U.S.C. Sec. 601 (1982). A state is eligible for partial reimbursement of its AFDC benefits payments from the federal government if it "has an approved plan for aid and services to needy families with children...." Id. Sec. 603. State plans are approved by the Secretary of Health and Human Services. The Secretary must approve state plans that comply with the requirements of 42 U.S.C. Sec. 602(a) and applicable regulations of the Department of Health and Human Services. See 42 U.S.C.A. Sec. 602(b) (West Supp.1987). The regulations provide that state plans must impose the conditions of eligibility for receipt of benefits required by the Social Security Act. See 45 C.F.R. Sec. 233.10(a)(1)(i) (1986). Additionally, state plans may impose other conditions of eligibility, "if such conditions assist the State in the efficient administration of its public assistance programs, or further an independent State welfare policy, and are not inconsistent with the provisions and purposes of the Social Security Act." Id. Sec. 233.10(a)(1)(ii)(B).
 
 
 6
 Virginia has adopted a plan for aid and services to needy families with children which has been approved by the Secretary of Health and Human Services. As part of this plan, the Virginia Department of Social Services has promulgated a regulation concerning transfers of assets by applicants for AFDC benefits. The regulation renders an applicant ineligible for AFDC benefits for specified periods of time if, for the purpose of obtaining benefits, the applicant transfers or disposes of any legal or equitable interest in real or personal property without adequate compensation within two years of applying for AFDC benefits.[2] It is the validity of this regulation that is at issue in this case.
 
 III.
 
 7
 Deel and Adcock contend that the Virginia transfer of assets rule is invalid because it violates the "availability principle" embodied in the Social Security Act. In the AFDC context the availability principle is derived from 42 U.S.C.A. Sec. 602(a)(7)(A) (West Supp.1987), which provides that states administering AFDC programs "shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children...." The terms "income" and "resources" as used in Sec. 602(a)(7)(A) have consistently been interpreted to mean that states may consider only income and resources that are available to applicants in determining AFDC eligibility. See Bell v. Massinga, 721 F.2d 131, 133 (4th Cir.1983), cert. denied, 470 U.S. 1050, 105 S.Ct. 1746, 84 L.Ed.2d 812 (1985). The regulations promulgated under the statute incorporate this availability principle. The regulations require that state AFDC plans must
 
 
 8
 [p]rovide that in determining need and the amount of the assistance payment ... (D) Income ... and resources available for current use shall be considered. To the extent not inconsistent with any other provision of this chapter, income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance.
 
 
 9
 45 C.F.R. Sec. 233.20 (a)(3)(ii) (1986). As the Supreme Court has noted, the purpose of the availability principle "is to prevent the States from relying on imputed or unrealizable sources of income artificially to depreciate a recipient's need." Heckler v. Turner, 470 U.S. 184, 201, 105 S.Ct. 1138, 1148, 84 L.Ed.2d 138 (1985).
 
 
 10
 Deel and Adcock argue that the Virginia transfer of assets rule violates the availability principle, because it allows Virginia to consider assets that are not available to AFDC applicants in determining eligibility for benefits. As Deel and Adcock point out, the transfer of assets rule permits Virginia to deny benefits to applicants on the basis of assets that have been transferred and are no longer available to the applicants. In granting the defendants' motion for summary judgment in this case, the district court recognized the existence of the availability principle, but held that recent amendments to the Social Security Act enacted as part of the Deficit Reduction Act of 1984 ("DEFRA") had modified the availability principle to an extent sufficient to render the Virginia transfer of assets rule valid. We disagree.
 
 
 11
 In upholding the Virginia transfer of assets rule, the district court relied on 42 U.S.C. Sec. 602(a)(7)(B) (West Supp.1987), as amended by DEFRA. The amended statute provides in pertinent part:
 
 
 12
 A State plan for aid and services to needy families with children must--
 
 
 13
 * * *(7) ... provide that the State agency--
 
 
 14
 * * *
 
 
 15
 (B) shall determine ineligible for aid any family the combined value of whose resources (reduced by any obligation or debts with respect to such resources) exceeds $1,000 or such lower amount as the State may determine, but not including as a resource for purposes of this subparagraph ... (iii) for such period or periods of time as the Secretary may prescribe, real property which the family is making a good-faith effort to dispose of, but any aid payable to the family for any such period shall be conditioned upon such disposal, and any payments of such aid for that period shall (at the time of the disposal) be considered overpayments to the extent that they would not have been made had the disposal occurred at the beginning of the period for which the payments of such aid were made....
 
 
 16
 The district court extrapolated from this statutory provision the rule that states should "include, for purposes of determining [AFDC] eligibility, the value of real property of which the family is not making a good faith effort to dispose." Deel, 641 F.Supp. at 789. In the district court's view, "the critical question [was] whether Virginia's transfer of assets rule properly defines what is a bad faith effort to dispose of real property." Id. Finding that Virginia had properly defined "bad faith" in the transfer of assets rule, the district court upheld the rule as valid and authorized under the Social Security Act.
 
 
 17
 We cannot accept the district court's analysis. We recognize, of course, that "the source of the availability principle is statutory, and, as such, is not immutable, but subject to such changes as Congress sees fit to make." Davis v. Lukhard, 788 F.2d 973, 979 (4th Cir.), cert. denied, --- U.S. ----, 107 S.Ct. 231, 93 L.Ed.2d 157 (1986). We agree with the district court that Congress did modify the availability principle in enacting the DEFRA amendments to Sec. 602(a)(7)(B). However, we cannot agree that the DEFRA amendments modified the availability principle in such a way as to render the Virginia transfer of assets rule valid.
 
 
 18
 As we read the amended Sec. 602(a)(7)(B)(iii), the statute provides a limited exception to the availability principle when an AFDC applicant retains real property. The exception works in favor of the applicant by providing that such real property will not be considered available to the applicant in determining eligibility for benefits during certain periods in which the applicant is making good-faith efforts to dispose of the property. By contrast, the Virginia transfer of assets rule operates to deny AFDC benefits to applicants who improperly transfer real or personal property for less than adequate compensation. In our view, Sec. 602(a)(7)(B)(iii) simply has nothing to do with the circumstances which the Virginia transfer of assets rule seeks to address; i.e., situations in which AFDC applicants transfer real or personal property. Because Sec. 602(a)(7)(B)(iii) does not purport to regulate transfers of real or personal property by AFDC applicants, we believe that the district court erred in concluding that the amended statute had modified the availability principle in such a way as to render the Virginia transfer of assets rule valid.[3]IV.
 
 
 19
 Having concluded that the DEFRA amendment of Sec. 602(a)(7)(B)(iii) did not modify the availability principle as it applies to transfers of assets by AFDC applicants, we next consider whether Virginia's transfer of assets rule can be upheld as a valid, state-imposed benefits eligibility criterion that does not conflict with the availability principle. Our review of relevant precedent convinces us that it cannot.
 
 
 20
 In Randall v. Lukhard, 709 F.2d 257 (4th Cir.1983), relevant holdings adopted on rehearing en banc, 729 F.2d 966 (4th Cir.), cert. denied, 469 U.S. 872, 105 S.Ct. 222, 83 L.Ed.2d 152 (1984), we considered a challenge to a transfer of assets rule applied by Virginia in Medicaid benefits cases. The Medicaid transfer of assets rule at issue in Randall was quite similar to the rule at issue in this case.[4] In Randall, as in this case, applicants for benefits sought to have the transfer of assets rule declared invalid on the ground that it conflicted with the availability principle as applied in the Medicaid context.
 
 
 21
 In holding that the transfer of assets rule at issue in Randall was invalid in the absence of specific congressional authorization for such a rule, we noted that the Medicaid statute permits states to consider only such income and resources as are available to applicants and recipients in determining eligibility for Medicaid benefits. See 42 U.S.C.A. Sec. 1396a(a)(17) (West Supp.1987). The federal regulation in effect at the relevant time provided that states could consider only income and resources that were actually available to Medicaid applicants and recipients. See Randall, 709 F.2d at 260. After reviewing the relevant statutory and regulatory language concerning the availability requirement, we concluded that "Virginia's [transfer of assets] rule violated this plain language by including resources no longer 'actually available' to the applicant or recipient. It is apparent that resources that were previously irrevocably transferred to another person, regardless of the amount of compensation received, simply are no longer actually available." Id. at 263-64. Accordingly, we held that in the absence of any congressional authorization for such a rule, Virginia's transfer of assets rule conflicted with the availability requirement of federal law, and was therefore invalid. Id.
 
 
 22
 In Randall, however, we recognized that after Virginia had promulgated its transfer of assets rule, Congress enacted the Boren-Long Amendment, which "authorized state Medicaid plans to employ a transfer of assets rule providing for the inclusion in an applicant's resources of any property transferred for less than its full value ... in order for the transferor to become or remain eligible for assistance." Id. at 261-62. Because the Boren-Long Amendment specifically authorized states to employ transfer of assets rules in the Medicaid context, we held that Virginia could validly impose such a rule after passage of the Amendment.
 
 
 23
 In our view, the circumstances of this case are analogous to the situation presented in Randall before passage of the Boren-Long Amendment. Here, as in the Medicaid context, there is a general rule that states may consider only those resources that are available to applicants or recipients in determining eligibility for AFDC benefits. As previously discussed, Congress has not modified this general rule in such a way as to authorize state transfer of assets rules in the AFDC context. Like the rule at issue in Randall, the transfer of assets rule in this case violates the availability principle by permitting AFDC eligibility determinations to be made on the basis of transferred assets that are neither actually available to, nor legally attainable by, AFDC applicants and recipients. As in Randall, it is apparent in this case "that resources that were previously irrevocably transferred to another person, regardless of the amount of compensation received, simply are no longer actually available." Randall, 709 F.2d at 264.
 
 
 24
 In Randall, our conclusion that Virginia's Medicaid transfer of assets rule conflicted with the availability principle led us to hold that the transfer of assets rule was invalid. We think that the same conclusion is warranted in this case. Although states may impose their own conditions of eligibility for benefits on AFDC applicants and recipients, they may not impose eligibility criteria that conflict with the provisions or purposes of the Social Security Act. See 45 C.F.R. Sec. 233.20(a)(1)(ii)(B) (1986). Because Virginia's transfer of assets rule imposes eligibility requirements that violate the availability principle as applied in the AFDC context, the rule conflicts with the Social Security Act and is therefore invalid.
 
 V.
 
 25
 The defendants contend that we should uphold Virginia's transfer of assets rule on the ground that it is a valid fraud-control device permitted by federal law. This argument has a certain amount of appeal. We are, of course, sympathetic to the strong interest that Virginia has in deterring fraudulent conduct on the part of AFDC applicants and recipients. Additionally, we recognize that applicable regulations require Virginia and other states administering AFDC programs to implement procedures for detecting and deterring fraud. See 45 C.F.R. Sec. 235.110 (1986). However, in view of our determination that the transfer of assets rule is invalid because it conflicts with the availability principle of federal law, we must conclude that the rule cannot be upheld as a valid fraud-control device.
 
 
 26
 We considered essentially the same argument advanced by the defendants in this case in Randall v. Lukhard and Fabula v. Buck, 598 F.2d 869 (4th Cir.1979). In Fabula, we held that a Maryland transfer of assets rule affecting Medicaid eligibility conflicted with the Social Security Act and was thus invalid. The State of Maryland argued that the rule nonetheless should be upheld, because it was "not a substantive eligibility requirement, but simply a 'collateral restriction to eliminate fraudulent practices,' which applie[d] only where a transfer was made with the intent of becoming eligible for assistance or circumventing the state's recovery procedures." Fabula, 598 F.2d at 873. We rejected this argument, holding that the transfer of assets rule was, in fact, an eligibility requirement that could not be upheld, because it conflicted with the Social Security Act.
 
 
 27
 In Randall, we relied on Fabula in rejecting the argument that Virginia's transfer of assets rule restricting Medicaid eligibility should be upheld as a device to control fraud. After concluding that the transfer of assets rule violated the availability principle as applied in the Medicaid context, we considered the Commonwealth of Virginia's argument that the rule should be upheld as a fraud-deterring measure. We rejected this argument because we did not "agree that a state has the inherent authority to enact collateral eligibility rules not in compliance with [the availability principle] simply because those rules attempt to deter fraud." Randall, 709 F.2d at 264 n. 12.
 
 
 28
 In our opinion, the decisions in Randall and Fabula compel the conclusion that the transfer of assets rule at issue in this case cannot be upheld as a valid fraud-control device. As we have held, Virginia's transfer of assets rule is invalid, because it conflicts with the availability principle as applied in the AFDC context. In view of the teachings of Randall and Fabula, we must reject the argument that the transfer of assets rule nonetheless should be upheld merely because its purpose is to deter fraud.[5]
 
 VI.
 
 29
 We hold that Virginia's transfer of assets rule restricting eligibility for AFDC benefits is invalid, because it conflicts with the availability principle of federal law as applied in the AFDC context. Accordingly, we reverse the district court's grant of summary judgment in favor of the defendants and remand this case for further proceedings. On remand, the district court is directed to enter judgment in favor of the plaintiffs, together with an appropriate order enjoining the continued application of Virginia's transfer of assets rule to deny benefits to AFDC applicants and recipients.
 
 
 30
 REVERSED AND REMANDED.
 
 
 31
 MOTZ, District Judge (concurring).
 
 
 32
 Being of the view that as a general matter a proliferation of concurring opinions is unwholesome, I am reluctant to state my views separately. However, in this instance I feel constrained to do so because it appears to me that the issues raised by cases such as this are becoming unnecessarily entangled and doctrinal disagreements developing where consensus should prevail.
 
 
 33
 I believe that Judge Ervin has analyzed and applied the prior decisions of this Court accurately. I further believe, however, that this case brings to the fore concerns which make it apparent that two of those decisions, Fabula v. Buck, 598 F.2d 869 (4th Cir.1979) and Randall v. Lukhard, 729 F.2d 966 (4th Cir.1984), affirming in part, 709 F.2d 257 (4th Cir.1983), cert. denied, 469 U.S. 872, 105 S.Ct. 222, 83 L.Ed.2d 152 (1984), while being correctly decided on their facts, may be misdirecting the Court's focus.
 
 
 34
 Judge Ervin fairly reads Fabula and Randall as establishing the principle that absent specific congressional authorization, a State lacks the power to adopt as an anti-fraud measure a transfer of assets rule which conflicts with a requirement of federal law. In the abstract this principle is sound. However, in applying it I would begin the process of analysis at a somewhat different point than Randall and Fabula suggest. It seems to me that it is sensible to assume that, absent an indication to the contrary, Congress, when enacting welfare legislation, proceeds on the unspoken premise that those who commit fraud against a program should not receive its benefits. If this premise is accepted as true, the inquiry becomes twofold: (1) is there evidence in the legislative history or in the general statutory scheme that Congress intended that particular conduct should not be deemed to be fraudulent, and (2) is the State transfer of assets rule drawn with sufficient precision to prohibit only actual fraud rather than to impose an unauthorized additional eligibility requirement.
 
 
 35
 It is this approach, rather than one which starts by asking if Congress has specifically authorized an exception to the amorphous "availability principle," which I believe to be the proper one. Applying it here, I would find that Virginia may properly adopt a transfer of assets rule to deter fraud. However, I would also find that the transfer of assets rule in question is too broadly drawn for an anti-fraud purpose. Specifically, I would find that the conclusive presumption which it establishes rendering a transfer fraudulent unless "the client ... [can] provide evidence that other resources were available, at the time of the transfer, to meet the needs of that client" is far too encompassing in its scope. Although such a presumption (like other mechanical rules) may make administration of the AFDC program easier, it is too crude an instrument to use to determine if a recipient has committed fraud. Cf. Owens v. Roberts, 377 F.Supp. 45 (M.D.Fla.1974).[1] Of course, Congress may (as it did in enacting the Boren-Long Amendment) empower or direct States to adopt procedural rules which under certain circumstances place the burden upon a recipient to prove that he has not committed fraud. In my view, however, where a State adopts a transfer of assets rule as an implicitly authorized anti-fraud measure, the rule must be sufficiently flexible and fair to ferret out only genuinely fraudulent conduct.
 
 WILKINSON, Circuit Judge, dissenting:
 
 36
 Beginning with the decision in Randall v. Lukhard, 709 F.2d 257 (4th Cir.1983), this circuit has pursued a construction of the availability principle which threatens to leave the states virtually powerless to pursue valid goals in the administration of joint federal-state welfare programs. Even assuming the correctness of Randall, however, this decision is unwarranted. The principal opinion runs counter to the intent of Congress, gives insufficient weight to the position of the federal agency charged with overseeing the AFDC program, and seals with judicial approval a most distressing type of dishonesty. Only those who defraud the welfare system can benefit from this decision, and I respectfully dissent.
 
 I.
 
 37
 I do not believe that Randall v. Lukhard, supra, should be extended to the entire field of welfare administration. In particular, Randall should not be extended to the AFDC program, which has always been administered as a scheme of cooperative federalism. The principal opinion has flouted Supreme Court guidelines for interpreting state AFDC regulations and adopted a more rigid view of the availability principle than Congress ever intended.
 
 
 38
 The Supreme Court has always recognized that the AFDC program is a "scheme of cooperative federalism." See King v. Smith, 392 U.S. 309, 316, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118 (1968). AFDC is largely financed by the federal government, but it is administered by the states. As has been true throughout the history of the program, "the area of greatest flexibility allowed the States ... is in the determination of eligibility requirements for recipients." U.S. Advisory Commission Report on Intergovernmental Relations, Statutory and Administrative Controls Associated with Federal Grants for Public Assistance 30 (1964). This state flexibility allows the development of specially tailored solutions to specific problems, and the program as a whole benefits as administrative techniques are tested in fifty separate proving grounds.
 
 
 39
 Recognizing the value of the state role in AFDC, the Supreme Court in New York State Department of Social Services v. Dublino, 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973), stated that "[t]he problems confronting our society in [the area of welfare administration] are severe, and state governments, in cooperation with the Federal Government, must be allowed considerable latitude in attempting their resolution." Id. at 413, 93 S.Ct. at 2513. The Court understands the fact that Congress simply cannot prescribe every detail of a program as complex as AFDC. If it could, state agencies would serve little purpose. The Court has thus been reluctant to imply conflicts between state and federal AFDC provisions that would debilitate state initiatives:
 
 
 40
 If Congress is authorized to act in a field, it should manifest its intention clearly. It will not be presumed that a federal statute was intended to supersede the exercise of the power of the state unless there is a clear manifestation of intent to do so. The exercise of federal supremacy is not lightly to be presumed.
 
 
 41
 Id. (quoting Schwartz v. Texas, 344 U.S. 199, 202-03, 73 S.Ct. 232, 235, 97 L.Ed. 231 (1952)).
 
 
 42
 The principal opinion dismisses Dublino in a footnote, declaring that where a state provision conflicts with federal law, the deferential approach of Dublino does not apply. The opinion never applies Dublino to determine whether a conflict exists in the first place. The correct approach here would have been to ask whether the availability principle represents a "clear manifestation" of congressional intent to forbid state transfer of assets provisions aimed at welfare chiseling. An examination of the history of the availability principle reveals no such congressional intent.
 
 
 43
 It is obvious that the scope of the availability principle is not to be found in the language of the statute in which it is embodied. See 42 U.S.C.A. Sec. 602(a)(7) (West Supp.1987). As this court has recognized, the availability principle is "derived from judicial and administrative interpretations of the statutory purposes of the ADC program." Davis v. Lukhard, 788 F.2d 973, 979 (4th Cir.1986). The principle is not therefore a rigid rule of uniform application; it is a judicial limitation on states that is to be applied only where the purposes of the AFDC program demand it. In this case, the purposes of AFDC certainly do not require judicial endorsement of fraud against the needy recipients who must share in the limited resources available for AFDC.
 
 
 44
 The true scope of the availability principle can be seen in its origins. In the hearings and floor debate over the 1939 amendments to the Social Security Act that added section 602(a)(7), concern was expressed that states not deny benefits to the needy by imputing to them income contributions from relatives that were never actually made. See Hearings Relative to the Social Security Act Amendments of 1939 Before the House Committee on Ways and Means, 76th Cong., 1st Sess. 2254 (1939) (testimony of Arthur Altmeyer, Chairman of the Social Security Board); 84 Cong.Rec. 6851 (1939) (remarks of Rep. Poage), cited in Heckler v. Turner, 470 U.S. 184, 200, 105 S.Ct. 1138, 1147, 84 L.Ed.2d 138 (1985). This is the concern that was later embodied by the Social Security Board in its regulations, and that has remained a part of AFDC regulations ever since, see 45 C.F.R. Sec. 233.20(a)(3)(ii) (1986).
 
 
 45
 Sound interpretations of the availability principle have not strayed from this original purpose--preventing states from imputing income from relatives and housemates that is not actually available to the AFDC applicant. See, e.g., Van Lare v. Hurley, 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975); Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968) (each involving attribution to AFDC recipient of income of an able-bodied man living in the household but having no legal obligation to support the AFDC child). As the Supreme Court has stated, the principle has "served primarily to prevent the States from conjuring fictional sources of income and resources by imputing financial support from persons who have no obligation to furnish it or by overvaluing assets in a manner that attributes non-existent resources to recipients." Heckler v. Turner, 470 U.S. at 200, 105 S.Ct. at 1147.
 
 
 46
 This original understanding of the availability principle simply had nothing to say about situations in which an applicant who had assets that were clearly available elected fraudulently to give the assets away so as to become eligible for benefits. On the contrary, anti-fraud measures have long been an accepted part of AFDC administration, and certain anti-fraud measures are required by federal regulation. See 45 C.F.R. Sec. 235.110 (1986). Congress' receptivity to transfer of assets rules themselves is obvious from its endorsement of the rules in the Medicaid and SSI context. See 42 U.S.C. Secs. 1382b(c), 1396p(c) (1983). Randall took a huge step when it moved from preventing states from disqualifying applicants based on income they never had to preventing states from disqualifying those who had available assets and transferred them to cheat the system. In my view that step was neither required by the availability principle nor rational as a matter of policy, and it should not be extended. To do so would accord the availability principle an inexorable life of its own, wholly apart from the congressional concerns that gave it birth.
 
 
 47
 Cases from other courts reveal that the availability principle is not a rigid rule requiring states to ignore any assets that are not actually available. The Supreme Court has held that states may include mandatory tax withholdings in income for purposes of determining AFDC eligibility despite the fact that withholdings are never actually "available" to the family. See Heckler v. Turner, 470 U.S. at 201-202, 105 S.Ct. at 1148. In a case that provides a telling analogy to our facts, the Fifth Circuit held that recoupment of AFDC overpayments did not violate the availability principle despite the fact that the amounts overpaid had been spent, and were no longer actually available for support. See Jacquet v. Westerfield, 569 F.2d 1339 (5th Cir.1978). The recoupment of overpayments was not precluded by Van Lare, Lewis, or King because it did not involve the "assumption of income" that would never reach the recipient. Rather, overpayments, like the assets disposed of here, had been available to the recipient. To ignore that property in determining eligibility would allow a recipient to "acquire fraudulently more than his entitlement at the expense of other families benefiting from the AFDC program." Id. at 1343.
 
 II.
 
 48
 Two congressional amendments to the AFDC statute provide further reasons for upholding the Virginia transfer of assets rule--reasons that were not present in Randall. The Omnibus Budget Reconciliation Act of 1982 (OBRA) and the Deficit Reduction Act of 1984 (DEFRA), both aimed at reducing federal spending, modified AFDC eligibility determinations. The OBRA and DEFRA amendments reveal that there is no congressional sanction for an availability principle that prevents states from taking even the most modest steps to curtail fraud in the administration of their welfare programs. The principal opinion dismisses OBRA and DEFRA in the same way that it dismisses Dublino. By taking as its starting point the proposition that transfer of assets rules violate the availability principle, the panel requires "specific authorization" from Congress if OBRA and DEFRA are to validate the rules. This misstates the proper significance of the amendments to this case as well as the role of the states in the AFDC program.
 
 
 49
 OBRA and DEFRA provide strong evidence that the Virginia rule is in harmony with congressional intent. The history of the OBRA provisions reveals that Congress intended that families not be allowed to receive AFDC when they have "resources upon which they could reasonably be expected to draw." S.Rep. No. 139, 97th Cong., 1st Sess. 503, reprinted in 1981 U.S.Code Cong. & Admin.News 396, 769. This is the precise problem that the transfer of assets rule attempts to address in a different context by preventing families with resources from making a fictive legal transfer to a relative and then claiming AFDC. Invalidating the transfer of assets rule also frustrates another of Congress' often-expressed goals--that AFDC benefits be "restricted to those most in need." Id. see also Davis v. Lukhard, 591 F.Supp. 319, 325 (E.D.Va.1984), vacated as moot, 788 F.2d 973 (4th Cir.1986).
 
 
 50
 The terms of the DEFRA amendment concerning good faith efforts to dispose of real property also shed light on congressional attitudes toward AFDC. The provision allows families to continue to receive AFDC while they are making "good faith efforts" to dispose of property that would make them ineligible for AFDC. See 42 U.S.C.A. Sec. 602(a)(7)(B)(iii) (West Supp.1987). Two conclusions follow from this. First, the requirement of "good faith" in the amendment suggests that Congress would not be pleased with the principal opinion's result of allowing applicants to profit from bad faith transfers. Cf. Deel v. Lukhard, 641 F.Supp. 784, 789 (W.D.Va.1986). No one has pointed to a shred of evidence that Congress really intended to allow undeserving applicants to put their assets in the custody of a friend or relative and then reap the limited resources of AFDC. As Judge Murnaghan wrote in his Randall dissent, "Congress neither meant nor wrote to permit such a mischievous practice." Randall, 729 F.2d at 969.
 
 
 51
 Second, in the course of claiming to follow congressional intent, the principal opinion undermines Congress' work in passing the DEFRA asset disposal provision. Under the DEFRA amendment, AFDC recipients may, for a limited time, exclude from their resources for purposes of eligibility assets that they are making good faith efforts to dispose of. Once the assets are sold, however, AFDC benefits that would not have been paid had the assets been sold earlier are treated as overpayments. See 42 U.S.C.A. Sec. 602(a)(7)(B)(iii) (West Supp.1987). The principal opinion now provides a ready means of circumventing this provision and Congress' explicit intentions. By means of a fictive transfer, recipients can avoid both the obligation to make a good faith effort to sell the property and the recoupment of benefit amounts that would be deemed overpayments following the sale. This result takes the amorphous availability principle so far that it negates a specific and explicit statute.
 
 III.
 
 52
 I further disagree with the principal opinion's refusal to defer to the position of the Secretary of HHS in this case. The Secretary has the responsibility for reviewing every state AFDC plan to ensure that it complies with the federal statute, including Sec. 602(a)(7). As the Supreme Court stated with regard to construing AFDC provisions in Dublino, "the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong." Dublino, 413 U.S. at 421, 93 S.Ct. at 2516-17. The Secretary has had the opportunity to observe many state transfer of assets rules for years, and has consistently approved them. See U.S. Department of Health and Human Services, Characteristics of State Plans for Aid to Families with Dependent Children (1976); Id. (1983); Id. (1984); Id. (1985). The consistency of the Secretary's approval of transfer of assets rules strongly argues for deference. See, e.g., Morton v. Ruiz, 415 U.S. 199, 237, 94 S.Ct. 1055, 1075, 39 L.Ed.2d 270 (1974). There is no reason for this court to ignore the settled practice of the agency charged with administering the statute nationwide. This is especially true in light of the fact that it was an administrative statement that gave independent life to the availability principle in the first place. See Heckler v. Turner, 470 U.S. at 200, 105 S.Ct. at 1147. The principal opinion needlessly unsettles the law in this area, opening the door for ad hoc judicial review of the transfer of asset rules of thirty-three states.
 
 IV.
 
 53
 Believing that Virginia may enact a transfer of assets provision in order to thwart welfare fraud, I must add that I can detect no fatal flaw in the specific provisions of the challenged rule. Unlike state transfer of assets rules that have been invalidated by other courts, the rule here does not disqualify AFDC recipients on the sole basis of a property transfer for inadequate consideration. Cf. Udina v. Walsh, 440 F.Supp. 1151 (E.D.Mo.1977); Buckner v. Maher, 424 F.Supp. 366 (D.Conn.1976); Owens v. Roberts, 377 F.Supp. 45 (M.D.Fla.1974). The Virginia rule at issue is aimed at disqualifying applicants who make gratuitous transfers for the purpose of receiving AFDC benefits to which they are not entitled. The validity of the time periods and rebuttable presumption used to carry out this purpose should be obvious from the similarity of the Virginia AFDC rule to those explicitly endorsed by Congress and the Secretary in the Medicaid and SSI context. See 42 U.S.C. Secs. 1382b(c), 1396p(c) (1983).
 
 
 54
 The concurring opinion would strike down the rule because it is not "sufficiently flexible and fair." Unfortunately, these vague terms provide no clue as to what the specific flaws of the rule might be or as to what type of review the concurring opinion is conducting. If "fair and flexible" is meant to be a euphemism for some species of due process review, then Lavine v. Milne, 424 U.S. 577, 96 S.Ct. 1010, 47 L.Ed.2d 249 (1976), which upheld a similar rebuttable presumption against a due process challenge, leaves no doubt that the Virginia rule should stand.
 
 V.
 
 55
 This foray of the federal judiciary into the field of welfare administration is a distinctly unwelcome development. Congress, the Secretary of Health and Human Services, and the state agencies are all better equipped for this task than we. We must interpret federal statutes, to be sure, but we are not called upon to do so in violation of every maxim of deference to those who bear primary responsibility for administering this sensitive and complex system. This result is pure mischief, and takes the availability principle far beyond anything intended by Congress. I would affirm the judgment of the district court and uphold the Virginia transfer of assets rule.
 
 
 
 [1]
 None of the parties addressed the issue of class certification in oral argument before this court. Based on our review of the briefs and record in this case, we find no reason to disturb the district court's denial of class certification
 
 
 [2]
 The full text of the regulation is as follows:
 TRANSFER OF PROPERTY--An applicant for ADC is ineligible for a specified period of time if he/she improperly disposes of his/her legal or equitable interest in real or personal property without adequate compensation within 2 years of application for ADC. A recipient is ineligible for a specified period of time if an improper transfer or other improper disposition of legal or equitable interest in real or personal property occurred within two years of discovery of the transfer or disposition. An improper transfer of property will result in the ineligibility of the assistance unit for two years from the date of transfer if the uncompensated value was $12,000 or less. The period of ineligibility will be increased two months for $1,000 or part thereof of uncompensated value in excess of $12,000. The amount of the uncompensated value is the fair market value or the disputed value per 303.4 of the property or the client's interest in the property less the amount of any compensation received for the property. Exceptions to this provision occur when:
 A. A transfer of property was not made in an effort to become or remain eligible for ADC. It will be the responsibility of the client to establish that such a transfer was not made in an effort to qualify for ADC. The client must provide objective evidence that the transfer was exclusively for another purpose. A subjective statement of intent or ignorance of the property transfer provision is not sufficient. The client must provide evidence that other resources were available, at the time of transfer, to meet the needs of that client.
 B. Retention of the property would have no effect on eligibility.
 C. The transfer of property resulted in compensation to the client which approximates the fair market value of the property. This compensation can be in the form of money, goods, or services. The value of the goods and services must be reasonable for the community. The value of services provided by a member of the immediate family must be at a reasonable rate established prior to receipt of the service.
 D. Payment has been made on the cost of medical care which approximates the equity value of the property.
 E. Disposition was the result of actions by another person, except a legal guardian, committee, or power of attorney, who for any reason, obtained the property without the client's full understanding of the action.
 In cases where the applicant/recipient is the caretaker relative other than the parent (non-legally responsible relative), this policy affects only the caretaker. The children's eligibility in such cases would not be affected by any transfer or disposition of property. Virginia ADC Manual Sec. 303.5.
 
 
 [3]
 Our conclusion is bolstered by the fact that Congress clearly knows how to modify the availability principle and establish transfer of assets rules. It has explicitly done so in the Supplemental Security Income context. See 42 U.S.C. Sec. 1382b(c) (1982). It has not done so in the AFDC context
 Additionally, we do not agree with the suggestion that we should uphold the Virginia transfer of assets rule in deference to the position that the Secretary of Health and Human Services has taken in this matter. At oral argument, the Secretary pointed out that a number of states have adopted transfer of assets rules similar to the rule at issue in this case. The Secretary has approved the state plans that contain transfer of assets rules. However, the Secretary has promulgated no regulations dealing with transfer of assets rules. Indeed, the existing regulations support the result that we reach in this case, since the regulations incorporate the availability principle as a criterion for determining eligibility for AFDC benefits. See 45 C.F.R. Sec. 223.20(a)(3)(ii)(D) (1986). Most importantly, however, Congress has not modified the availability principle in such a way as to render Virginia's transfer of assets rule valid. In the absence of any such action by Congress, we do not think that the Secretary's approval of state transfer of assets rules requires us to uphold the rule at issue in this case.
 
 
 [4]
 The transfer of assets rule at issue in Randall read as follows:
 An applicant for or recipient of medicaid as a recipient of SSI or a category related to a medically needy individual is ineligible for a period of one year if he transfers or otherwise disposes of his legal or equitable interest in real or personal property within one year prior to application or during receipt of such assistance to become or remain eligible for Medicaid. The transfer or disposal of such property to become or remain eligible for SSI is considered as if the transfer or disposal is to become or remain eligible for Medicaid.
 Exceptions to this provision are: (1) when property has been transferred that would have no effect on eligibility except a residence when an individual is in a nursing home for a temporary period; (2) when payment has been made approximating the tax value of the property; (3) when payment has been made on the cost of medical care approximating the tax value of the property; or (4) when the property owner has been a victim of actions on the part of another person who for any reason obtained the property without the applicant's/recipient's full understanding of the action.
 Virginia State Dep't. of Welfare Medicaid Manual Secs. 201.1A.3(2), 301.1(D)(3), and 402.1(B)(3).
 
 
 [5]
 We are not persuaded that the Supreme Court's decision in New York State Department of Social Services v. Dublino, 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973), requires a different result. In Dublino, the Court upheld a state rule requiring acceptance of employment as a condition for receipt of AFDC benefits. It was suggested at oral argument in this case that Dublino stands for the proposition that states may impose eligibility requirements for receipt of AFDC benefits so long as such requirements do not conflict with federal law. This is consistent with the position expressed in the applicable regulations. See 45 C.F.R. Sec. 233.10(a)(1)(ii)(B) (1986). It was also suggested at oral argument that the transfer of assets rule at issue in this case could be upheld as a valid, state-imposed eligibility requirement under the rationale of Dublino. We do not agree
 Much the same argument that was advanced in this case was made in Randall v. Lukhard. In Randall, the Commonwealth of Virginia relied on Dublino in arguing that its Medicaid transfer of assets rule should be upheld as a valid fraud-control device. We distinguished Dublino from the situation presented in Randall on the ground that the state eligibility rule at issue in Dublino had involved no conflict with federal law. See Randall, 709 F.2d at 264 n. 12. In Randall, as noted previously, we held that Virginia's transfer of assets rule was invalid because it did conflict with federal law; i.e. with the availability principle as applied in the Medicaid context. Because the same conflict is present in this case, we are not convinced that Dublino requires us to uphold the transfer of assets rule that Virginia imposes on AFDC applicants and recipients.
 
 
 [1]
 In his dissent Judge Wilkinson suggests that the presumption established by the Virginia regulation is a rebuttable one. I disagree. Although the regulation permits a client "to establish that ... [the] transfer was not made in an effort to qualify for ADC," it unqualifiedly posits that in order to meet that burden the client "must provide " evidence of the availability of other assets at the time of the transfer. Thus, a client who must liquidate assets at less than fair market value in order to meet an emergency for the very reason that he does not have other resources available to him cannot sustain his burden under the regulation. It is this rigidity in the regulation which in my view renders it violative of due process