**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

SAMUEL ANTRICAN, minor; ALANA
ANTRICAN, minor, by their next
friend Angela Antrican; JESHOD
HUGHES, minor; EMANI TATUM,
minor, by their next friend Thea
Gilbert; ARIELLE MCCREE, minor, by
her next friend Sherry McCree;
AUSTIN BROOKS, minor, by his next
friend Marty Greer, on behalf of
themselves and all others similarly
situated,

　　　　　　　*Plaintiffs-Appellees,*

　　　　　　　v.

CARMEN HOOKER ODOM, Secretary of
the North Carolina Department of
Health and Human Services; NINA
M. YEAGER, Director of the North
Carolina Division of Medical
Assistance,

　　　　　　　*Defendants-Appellants.*

UNITED STATES OF AMERICA,

　　　　　　　*Amicus Curiae.*

No. 01-1693

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Malcolm J. Howard, District Judge.
(CA-00-173-4-4H)

Argued: February 26, 2002

Decided: May 9, 2002

Before NIEMEYER and HAMILTON, Circuit Judges, and
Raymond A. JACKSON, United States District Judge
for the Eastern District of Virginia,
sitting by designation.

---

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Senior Judge Hamilton and Judge Jackson joined.

---

**COUNSEL**

**ARGUED:** Ronald Moore Marquette, Special Deputy Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellants. Martha Jane Perkins, NATIONAL HEALTH LAW PROGRAM, Chapel Hill, North Carolina, for Appellees. Alisa Beth Klein, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus Curiae. **ON BRIEF:** Roy Cooper, North Carolina Attorney General, Robert J. Blum, Special Deputy Attorney General, Emery E. Milliken, Assistant Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellants. Reid C. Adams, Jr., WOMBLE, CARLYLE, SANDRIDGE & RICE, Winston-Salem, North Carolina; Garth Gersten, WOMBLE, CARLYLE, SANDRIDGE & RICE, Research Triangle Park, North Carolina; Carlene McNulty, NORTH CAROLINA JUSTICE & COMMUNITY DEVELOPMENT CENTER, Raleigh, North Carolina, for Appellees. Robert D. McCallum, Jr., Assistant Attorney General, John Stuart Bruce, United States Attorney, Mark B. Stern, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus Curiae.

---

**OPINION**

NIEMEYER, Circuit Judge:

Several North Carolina Medicaid beneficiaries commenced this class action under 42 U.S.C. § 1983 against North Carolina State offi-

cials to obtain (1) a declaratory judgment that dental screening and treatment services provided to minors in North Carolina under the Medicaid program are inadequate and fail to comply with the requirements of the Medicaid Act and (2) an injunction requiring the State officials to comply with the Medicaid Act by making dental screening and treatment promptly available. The district court, relying on *Ex Parte Young*, 209 U.S. 123 (1908), denied the North Carolina State officials' motion to dismiss based on Eleventh Amendment immunity. The court also rejected the officials' other jurisdictional challenges. On this interlocutory appeal, we affirm the district court's ruling on Eleventh Amendment immunity, and we decline to exercise pendent appellate jurisdiction over the other grounds on which the State officials relied to support their motion to dismiss the complaint.

I

The plaintiffs, who are minors, allege in their complaint that they have been denied the dental care prescribed by Title XIX of the Social Security Act, known as the "Medicaid Act." Noting that only 16% of North Carolina's dentists participate in the Medicaid program, they allege that they are unable to locate local dentists who are willing to treat them in exchange for Medicaid reimbursement. They assert that Medicaid beneficiaries in North Carolina generally must conduct extensive searches and travel long distances to locate and utilize the services of a dentist who will accept Medicaid reimbursement.

Describing their own experiences, Emani Tatum, 3, alleges that she has had to travel two hours each way to utilize the services of a dentist. While a dental clinic closer to her provided an initial screening, that clinic was unable to provide ongoing care. As a result of the inaccessibility of prompt and adequate care, she has had to have extensive dental care, including three fillings and two crowns. JeShod Hughes, 9, alleges that he has had similar difficulties in obtaining treatment. Arielle McCree, 6, alleges that her mother contacted the local Department of Social Services to find a dentist, only to be referred to the public health clinic, which was unable to provide dental services. The Department of Social Services then could not provide the name of any dentist for McCree who would accept Medicaid reimbursement. McCree's mother eventually located a dentist an hour away. Austin Brooks, 6, alleges that his grandmother contacted numerous dentists

in his area, but none would accept Medicaid. Because he could not locate a dentist in his area, he could not receive preventive dental treatment. When he began experiencing oral pain, his grandmother located a dentist three hours away. Because of the lack of preventative dental care, Brooks has had to have four of his front teeth pulled and several of his remaining teeth capped.[1]

Because of their inability to receive adequate dental care, these plaintiffs, through their parents, guardians, or next friends, commenced this action on behalf of themselves and on behalf of others similarly situated against Carmen Hooker Buell, Director of the North Carolina Department of Health and Human Services, and Nina M. Yeager, Director of the North Carolina Division of Medicaid Assistance, in their official capacities.[2] Plaintiffs allege that the defendants have: (1) denied North Carolina Medicaid beneficiaries equal access and quality care, in violation of 42 U.S.C. § 1396a(a)(30)(A) and 42

_____

[1]With respect to the two Antrican plaintiffs, the parties agree that they are not presently eligible for benefits under the Medicaid program and that they will be dismissed from this action.

[2]North Carolina has chosen to participate in the federal Medicaid program and, therefore, agrees to follow the requirements of the Medicaid Act and accept federal funding for its Medicaid program. N.C. Gen. Stat. Ann. § 108A-56. Buell and Yeager are the North Carolina officials charged with administering the North Carolina Medicaid program.

Generally, the Medicaid Act provides conditional federal financial assistance to states that choose to participate in the Medicaid program. *See* 42 U.S.C. § 1396 *et seq*. The purpose of the program is to enable states "to furnish . . . medical assistance on behalf of families with dependent children . . . whose income and resources are insufficient to meet the costs of necessary medical services," and funds are available to "States which have submitted, and had approved by the Secretary [of the United States Department of Health and Human Services], State plans for medical assistance." 42 U.S.C. § 1396. States are not required to participate in the Medicaid program, but if they choose to participate, and succeed in having their plans approved by the Secretary, they must implement and operate Medicaid programs that comply with detailed federally mandated standards. *See* 42 U.S.C. § 1396a. If a participating State fails to comply with federal standards, the Secretary may withhold federal funding from the State until it brings its plan back into compliance with those standards. *See* 42 U.S.C. § 1396c.

C.F.R. § 447.204; (2) failed to ensure statewide availability of dental services, in violation of 42 U.S.C. § 1396a(a)(1) and 42 C.F.R. § 431.50; (3) denied North Carolina Medicaid beneficiaries timely dental care, in violation of 42 U.S.C. § 1396a(a)(8) and 42 C.F.R. § 435.930; (4) denied Medicaid beneficiaries a free choice of dental care providers, in violation of 42 U.S.C. § 1396a(a)(23) and 42 C.F.R. § 431.51; (5) denied Medicaid beneficiaries dental care that is comparable to the care available to non-Medicaid patients, in violation of 42 U.S.C. § 1396a(a)(10)(B) and 42 C.F.R. §§ 440.230, 440.240; and (6) denied Medicaid beneficiaries proper access to early screening and treatment services, in violation of 42 U.S.C. §§ 1396a(a)(10)(A), 1396a(a)(43), 1396d(a)(4)(B), 1396d(R), and 42 C.F.R. § 441.50 *et seq*.

For relief, the plaintiffs request (1) a judgment declaring that "the Defendants' failure to insure the availability of dental services violates Plaintiffs' rights under the Social Security Act . . . and its implementing rules and regulations" and (2) an injunction requiring the defendants to "make needed dental services immediately available to Medicaid beneficiaries in their respective localities" and requiring the defendants "to comply with the Federal statutes, rules, and regulations" governing Medicaid programs.

The North Carolina officials filed a motion to dismiss the plaintiffs' complaint, asserting Eleventh Amendment immunity, a lack of standing, and the failure of the complaint to state a claim under 42 U.S.C. § 1983 upon which relief can be granted. From the district court's order denying their motion, the North Carolina officials filed this interlocutory appeal, challenging the district court's ruling denying them Eleventh Amendment immunity. They also ask this court to exercise pendent appellate jurisdiction over the other rulings made by the district court.

## II

The district court's order denying State officials Eleventh Amendment immunity is an immediately appealable order, *see Puerto Rico Aquaduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993), and our review of this order is *de novo*, *see CSX Transp., Inc. v. Bd. of Pub. Works*, 138 F.3d 537, 541 (4th Cir. 1998).

The North Carolina officials contend that, because they have been sued in their official capacities, they are entitled to sovereign immunity under the Eleventh Amendment to the Constitution. They argue that the exception to such immunity, described in *Ex Parte Young*, 209 U.S. 123 (1908), is not applicable.

The *Ex Parte Young* exception to Eleventh Amendment immunity is designed to preserve the constitutional structure established by the Supremacy Clause. Thus, it allows private citizens, in proper cases, to petition a federal court to enjoin State officials in their official capacities from engaging in future conduct that would violate the Constitution or a federal statute. *See Ex Parte Young*, 209 U.S. at 159 (enjoining enforcement of a State statute found to violate the U.S. Constitution); *Green v. Mansour*, 474 U.S. 64, 68 (1985) (applying *Ex Parte Young* to an action involving State violation of a federal statute). This exception to sovereign immunity is based on the notion, often referred to as "a fiction," that a State officer who acts in violation of the Constitution is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." *Ex Parte Young*, 209 U.S. at 160. A State officer acting in violation of federal law thus loses "the 'cloak' of State immunity," *Bragg v. West Virginia Coal Mining Ass'n*, 248 F.3d 275, 292 (4th Cir. 2001), *cert. denied*, 122 S. Ct. 920 (2002), because in such a situation, "[t]he State has no power to impart to [the official] any immunity from responsibility to the supreme authority of the United States." *Ex Parte Young*, 290 U.S. at 160.

But "just because a private citizen's federal suit seeks declaratory injunctive relief against State officials does not mean that it must automatically be allowed to proceed under an exception to the Eleventh Amendment protection." *Bell Atlantic Md., Inc. v. MCI World-Com, Inc.*, 240 F.3d 279, 294 (4th Cir. 2001), *cert. granted sub nom. Verizon Md. v. Pub. Serv. Comm'n*, 121 S. Ct. 2548 (U.S. June 25, 2001) (No. 00-1531), *and United States v. Pub. Serv. Comm'n*, 121 S. Ct. 2548 (U.S. June 25, 2001) (No. 00-1711). "Such 'empty formalism' would improperly sacrifice the 'real interests served by the Eleventh Amendment.'" *Id.* (quoting *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 270 (1997)). As we explained in *Bell Atlantic Md.*, in applying the *Ex Parte Young* exception to Eleventh Amendment immunity, we must evaluate the respective State and federal interests,

applying *Ex Parte Young* narrowly "so as not unduly to erode the important underlying doctrine of sovereign immunity" while still protecting the supremacy of federal law. *Bell Atlantic Md.*, 240 F.3d at 294.

Arguing that this case traverses the narrow limits of the *Ex Parte Young* exception in several respects, the North Carolina officials assert that the exception does not apply because: (1) this suit requires expenditures of money from North Carolina's treasury and therefore the injunctive relief requested is not actually prospective; (2) the plaintiffs have not alleged an ongoing violation of federal law; (3) the law that plaintiffs allege has been violated is State law, not federal law; (4) the Medicaid Act was adopted under the Spending Clause and implemented through the voluntary participation of the States, making its prerequisites unenforceable under the Supremacy Clause — the fundamental reason for the *Ex Parte Young* exception; (5) the plaintiffs' action is actually against the State and not against the individuals and, in any event, violates the State's special sovereignty interests; (6) application of the *Ex Parte Young* exception would alter the remedial scheme explicitly selected by Congress to enforce the Medicaid Act; and (7) the rights that plaintiffs seek to enforce are discretionary in nature, not ministerial, and therefore are not subject to the *Ex Parte Young* exception.

We address, in turn, each of the reasons advanced by the North Carolina officials for not applying the *Ex Parte Young* exception to Eleventh Amendment immunity.

### A

The North Carolina officials contend first that this action does not fall within the *Ex Parte Young* exception because the type of relief sought is, at its core, not truly prospective. They assert that, while the plaintiffs phrase their request in terms of prospective injunctive relief, they actually seek an order directing the State to raise the Medicaid reimbursement rates paid to participating dentists, thereby adversely affecting the State's treasury. In response, plaintiffs point out that, although raising rates may be a method for inducing more dentists to participate in the Medicaid program, the plaintiffs' complaint does not demand a particular methodology. Rather, it simply "requests injunc-

tive relief to require the state officials to take steps to comply with a number of separate and varied Medicaid provisions."

We believe that the issue, as framed by the parties' positions, does not properly focus on the relevant question. It is true, as both parties acknowledge, that, as an exception to Eleventh Amendment immunity, *Ex Parte Young* actions must seek only prospective injunctive relief. But simply because the implementation of such prospective relief would require the expenditure of substantial sums of money does not remove a claim from the *Ex Parte Young* exception. *Ex Parte Young* "permits federal courts to enjoin state officials to conform their conduct to requirements of federal law, notwithstanding a direct and substantial impact on the state treasury." *Milliken v. Bradley*, 433 U.S. 267, 289 (1977); *cf. Edelman v. Jordan*, 415 U.S. 651, 668 (1974) (reversing a retroactive award of monetary relief because "it [was] in practical effect indistinguishable in many aspects from an award of damages against the State"). Thus, the focus on an injunction's impact on the State's treasury is misdirected. Rather, the proper focus must be directed at whether the injunctive relief sought is prospective or retroactive in nature.

This distinction comes from the Supreme Court's holdings in *Edelman* and *Milliken*. In *Edelman*, the Supreme Court determined that the relief sought infringed on sovereign immunity under the Eleventh Amendment because the plaintiffs sought a *retroactive* payment of benefits that were found to have been wrongfully withheld from proper recipients. 415 U.S. at 668. In the later-decided *Milliken* case, however, the Court upheld an injunction entered in a school desegregation case that ordered the State to pay one half of the costs attributable to certain educational programs ordered as part of a desegregation decree. The Court found that "[t]he decree . . . fit[ ] squarely within the prospective-compliance exception reaffirmed by *Edelman*. That exception . . . permits federal courts to enjoin state officials to conform their conduct to requirements of federal law, notwithstanding a direct and substantial impact on the state treasury." *Milliken*, 433 U.S. at 289. Thus, our inquiry must focus, not on whether the injunctive relief sought would have an impact on the State treasury, but on the prospective-retroactive distinction as delineated by *Edelman* and *Milliken*.

We conclude that the relief sought in this case is prospective in nature and, therefore, is of the type that falls within the *Ex Parte Young* exception. The plaintiffs requested an injunction mandating that in the future, State officials bring the North Carolina Medicaid program into compliance with the Medicaid Act. This mandate might potentially impact the State treasury, but it is nonetheless prospective.

B

The North Carolina officials next contend that plaintiffs' suit has failed to allege an *ongoing or continuing* violation of federal law, as is necessary to invoke the *Ex Parte Young* exception. These officials maintain that "[e]ach plaintiff, according to the complaint, is currently a Medicaid recipient who is receiving dental treatment by a dentist or clinic that accepts Medicaid patients at the current Medicaid reimbursement rate" and that, therefore, even though violations may have occurred in the past, they are not ongoing.

While the North Carolina officials correctly note that the *Ex Parte Young* exception requires the allegation of an ongoing violation of federal law, *see Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 281 (1997), their argument misreads the substance of the plaintiffs' complaint. The plaintiffs do not rest their complaint on any claim that they have been entirely unable to find dentists in North Carolina who will accept Medicaid reimbursement or that they have not received some treatment. Rather, they claim that North Carolina has failed, and continues to fail, to operate a Medicaid program under which beneficiaries can "obtain prompt and adequate dental services" on an ongoing basis, as would be available to the general population. They allege that because a large proportion of dentists do not participate in the Medicaid program, beneficiaries, such as themselves, have to travel long distances to find Medicaid-participating dentists. If true, these claims allege ongoing violations of: 42 U.S.C. § 1396a(a)(30)(A), requiring States to "provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan as . . . *are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population* in the geographic area" (emphasis added); and 42 U.S.C. § 1396a(a)(8), requiring States to "provide that all individuals wishing

to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished *with reasonable promptness to all eligible individuals*" (emphasis added). We thus conclude that the plaintiffs' complaint is not defective for failing to allege ongoing violations of federal law.

C

In the same vein, the North Carolina officials assert that this action seeks to enforce *State* law, not *federal* law. They contend that this action seeks to challenge the State's participation in the Medicaid program and not to vindicate the supremacy of federal law, arguing that "[m]erely because a State enacts a program that complies with federal guidelines or requirements, the program's requirements do not thereby become or constitute federal law for purposes of *Ex Parte Young*." For support, the North Carolina officials rely on our decision in *Bragg*, 248 F.3d 275, where we held that private parties could not bring an *Ex Parte Young* action against State officials seeking to compel their compliance with surface mining regulations because the directly applicable standards were supplied by West Virginia law.

Again, the North Carolina officials correctly observe that the *Ex Parte Young* exception does not apply to actions against State officials seeking to compel their compliance with *State* law. *See Pennhurst State Sch. & Hosp. v. Haldeman*, 465 U.S. 89, 106 (1984) ("We conclude that *Young* and *Edelman* are inapplicable in a suit against state officials on the basis of state law"); *Bragg*, 248 F.3d at 295-96. In *Bragg*, for instance, West Virginia State officials were sued under the Surface Mining Control and Reclamation Act of 1977. That Act permits states, such as West Virginia, to enact their own laws and thus obtain "primacy" status. Under the Surface Mining Act, a State with primacy status has *exclusive* control over the regulation of surface mining, so long as the State law fulfills minimum national standards. 248 F.3d at 293-94. We concluded that in that context "any injunction against State officials to enforce this provision would command them to comport with the State's own law, not federal law, because only the State law [was] operative and directly regulate[d] the issuance of [mining] permits." *Id.* at 296. Therefore, in that context, the *Ex Parte Young* exception did not apply.

But the Medicaid Act is not analogous to the Surface Mining Act. It does not grant to the States exclusive jurisdiction over their Medicaid programs. Rather, it requires States to have their plans approved by the supervising federal agency and to adhere to strict federal guidelines. 42 U.S.C. §§ 1396, 1396a. States that do not maintain their plans in compliance with the federal guidelines are denied continuing Medicaid funding from the federal government. 42 U.S.C. § 1396c. Thus, these federal standards remain the directly applicable standards with which the States must comply in order to receive federal Medicaid funding. Because the plaintiffs are seeking to enforce these directly applicable federal standards, the principles of *Pennhurst* and *Bragg* do not apply to remove this action from the *Ex Parte Young* exception.

D

The North Carolina officials next contend that the Medicaid Act, as Spending Clause legislation, is not "supreme" law and therefore does not fall within *Ex Parte Young*'s defining purpose, which is to "give life to the Supremacy Clause." *Bragg*, 248 F.3d at 292 (quoting *Green*, 474 U.S. at 68). They argue that "Spending Power enactments do not constitute the supreme authority of the United States, because the Constitution grants the Federal Government no power of compulsion under the Spending Clause." Indeed, the Medicaid program itself is a voluntary one and States could just as well adopt their own program. Thus, they conclude, the State and federal governments are on "equal constitutional footing," and neither has the power to compel the other. *See Westside Mothers v. Haveman*, 133 F. Supp.2d 549, 562 (E.D. Mich. 2001) (appeal pending) (holding that "because congressional enactments pursuant to the Spending Power that set forth the terms of federal-state cooperative agreements depend on the voluntary agreement of participating States and are not within the ambit of the Supremacy Clause, they are not the supreme law of the land, and suits cannot be brought against State officials under *Ex Parte Young* to enforce those requirements").

The North Carolina officials' novel position is, however, at odds with existing, binding precedent. The Supreme Court has noted that, "[a]lthough participation in the Medicaid program is entirely optional, once a State elects to participate, it must comply with the require-

ments of Title XIX [the Medicaid Act]." *Harris v. McRae*, 448 U.S. 297, 301 (1980). Thus, for those States that opt to participate in the program, the requirements of the Medicaid Act are mandatory. Consistent with this conclusion, the Supreme Court has treated the Medicaid Act as "supreme" law and has invalidated conflicting State law under the Supremacy Clause. *See Dalton v. Little Rock Family Planning Servs.*, 516 U.S. 474, 478 (1996) (remanding for the entry of an injunction against the enforcement of State law to the extent that it conflicted with the Medicaid Act); *see also Randall v. Lukhard*, 729 F.2d 966 (4th Cir. 1984) (en banc) (adopting holding from *Randall v. Lukhard*, 709 F.2d 257, that a Virginia rule was invalid because it conflicted with a provision of the Medicaid Act).

We are constrained to follow these precedents and thus conclude that the plaintiffs properly alleged an ongoing violation of supreme federal law.

E

The North Carolina officials next contend that "[a]ny injunctive relief ordered against the official defendants in this case would actually be directed at North Carolina, something clearly forbidden by the Eleventh Amendment," and that the State is, therefore, the "real party in interest."

This assertion, however, applies to every *Ex Parte Young* action. Injunctive relief of the type sought in this case will almost always, in some sense, affect the State itself. *See Coeur d'Alene Tribe*, 521 U.S. at 269 (noting that "[w]hen suit is commenced against state officials, even if they are named and served as individuals, the State itself will have a continuing interest in the litigation whenever state policies or procedures are at stake. This commonsense observation of the State's real interest when its officers are named as individuals has not escaped notice or comment from this Court, either before or after *Young*"). In fact, in *Ex Parte Young* itself, the actual defendant was the State Attorney General; yet the effect of the case was to nullify a State statute because the Court ordered the Attorney General not to enforce the statute. *See generally* 209 U.S. 123.

Similarly, in this case, even though the actual defendants are the State officials who oversee North Carolina's Medicaid program, the

relief requested would necessarily require North Carolina itself to change its Medicaid program to come into compliance with the Medicaid Act. While such an order might result in an intrusion on North Carolina's sovereignty, it would be precisely the type of order that is allowed under *Ex Parte Young* and its progeny. *See Rehabilitation Ass'n of Va., Inc. v. Kozlowski*, 42 F.3d 1444, 1449 (4th Cir. 1994) (rejecting Virginia's claim that the State was the real party in interest because "[t]he suit [sought] prospective, injunctive relief only, rather than any form of retroactive compensatory damages, and [was] brought against Kozlowski, not the State").

As part of their argument that plaintiffs' complaint is actually directed at the State, rather than at State officials, the North Carolina officials also contend that the plaintiffs' requested relief would undermine North Carolina's "special sovereignty interests." They argue that North Carolina has a "special sovereignty interest in being able to decide the extent to which its limited Medicaid funds will be used for optional Medicaid services . . . or be spent to compensate dentists and other health care providers who choose to participate in Medicaid," and that an infringement on this interest makes the *Ex Parte Young* exception to Eleventh Amendment immunity inapplicable in this case.

In *Coeur d'Alene Tribe*, the Supreme Court recognized that in some cases, special sovereignty interests will prevent an otherwise proper *Ex Parte Young* action from proceeding against State officials. The Court determined that *Ex Parte Young* did not apply in that case because the suit "would divest the State of its sovereign control over submerged lands, lands with a unique status in the law and infused with a public trust the State itself is bound to respect." *Coeur d'Alene Tribe*, 521 U.S. at 283. Thus, the Court determined that "[u]nder these particular and special circumstances," the *Ex Parte Young* exception to sovereign immunity was inapplicable. *Id.* at 287.

Similarly, we have recognized the applicability of the "special sovereignty interest" exception in circumstances when quasi-judicial state officers were sued in federal court to answer to assertions that they made the wrong decision in deciding a matter within their jurisdiction. *Bell Atlantic Md.*, 240 F.3d at 294. We noted that "the scope of interests that *Ex Parte Young* protects in preventing violations of fed-

eral law must be carefully circumscribed so as not unduly to erode the important underlying doctrine of sovereign immunity." *Id.*

This case, however, does not present a special sovereignty interest that would allow North Carolina to use its sovereign immunity shield to avoid an otherwise proper *Ex Parte Young* action. Rather, it involves a federally designed healthcare program in which the federal government has invited the States to participate if they agree to certain federally established conditions. "A state's interest in administering a welfare program at least partially funded by the federal government is not such a core sovereign interest as to preclude the application of *Ex Parte Young*." *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1287 (10th Cir. 1999); *cf. TFWS, Inc. v. Schaefer*, 242 F.3d 198, 205-06 (4th Cir. 2001) (holding that "Maryland's power under the Twenty-first Amendment is not as basic or exclusive as a state's territorial right to its submerged land," and concluding that the State's power under that amendment does not qualify as a special State sovereignty interest under *Coeur d'Alene Tribe*). North Carolina *elected* to participate in the federal Medicaid program and, therefore, to be bound by the requirements of the Medicaid Act. In doing so, the State agreed to the conditions of participation, including the possibility that if it failed to conform to the program as established by federal law, it faced the risk of being ordered by a federal court to correct the problems in its system. If the State did not want to face this federal involvement, it was free to decline federal funds and operate a State program for medical assistance using its own standards or to decline to operate such a program at all.

Although North Carolina may retain a special sovereignty interest in choosing whether to participate in the Medicaid program, once it elects to participate, it is not entitled to assert that interest to insulate itself from the requirements of the federal program.

F

The North Carolina officials next contend that in enacting the Medicaid Act, Congress provided a remedy that should displace any *Ex Parte Young* action that seeks to compel State compliance with the Medicaid Act. They note that under the Medicaid Act, withholding federal funds is the statutory sanction for noncompliance.

It is true that in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996), the Supreme Court held that "where Congress has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon *Ex Parte Young*." *Id.* at 74. But in designing an act in which a State could participate entirely or not at all, such as the Medicaid Act, Congress has not prescribed a detailed remedial scheme for dealing with noncompliance with the Act once a State elects to participate. On the contrary, the Supreme Court has concluded that the Medicaid Act does not provide the type of detailed remedial scheme that would supplant an *Ex Parte Young* action. *See Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 521-22 (1990) (holding that neither the provisions of the Medicaid Act authorizing the secretary to withhold approval of plans or to curtail federal funds to States whose plans are not in compliance with the Act, nor the required State administrative system allowing for appeals of reimbursement rates could be "considered sufficiently comprehensive to demonstrate a congressional intent to withdraw the private remedy of § 1983"); *see also Md. Psychiatric Soc'y v. Wasserman*, 102 F.2d 717, 719 n.* (4th Cir. 1996) (rejecting the argument that the Medicaid Act has a detailed remedial scheme evidencing congressional intent to foreclose *Ex Parte Young* actions brought to compel State officials to comply with the requirements of the Act).

Accordingly, we find no merit in this argument.

### G

Finally, the North Carolina officials argue that this action is not a proper *Ex Parte Young* action because it involves discretionary, not ministerial, acts by State officials. *See Ex Parte Young*, 209 U.S. at 158 ("There is no doubt that the court cannot control the exercise of the discretion of an officer. It can only direct affirmative action where the officer having some duty to perform not involving discretion, but merely ministerial in its nature, refuses or neglects to take such action").

This argument lacks merit because the Medicaid Act does not provide participating States with discretion to deny dental screening and treatment as specified in the Act. To the contrary, the Medicaid Act

clearly mandates that a State provide a certain level and quality of dental care. In light of this duty, a federal court can "direct [the] affirmative action [of complying with this duty]," and plaintiffs' allegations, if true, demonstrate that North Carolina State officers have "refuse[d] or neglect[ed] to take such action." *Id.* at 158; *see also Lewis v. N.M. Dep't of Health*, 261 F.3d 970, 976 (10th Cir. 2001) (allowing an *Ex Parte Young* challenge to New Mexico's Medicaid program to proceed despite an assertion that the claim impacted discretionary acts by State officials because the action requested only an order that State officials "comply with federal law," not how to use their discretion in complying).

In this case the plaintiffs seek only an order requiring North Carolina officials to comply with the mandates of the Medicaid Act to provide a specified type and level of care, not how to exercise any discretion conferred by that Act.

### III

For the foregoing reasons, we affirm the district court's order denying the North Carolina officials' motion to dismiss this case on the basis of Eleventh Amendment immunity. We conclude, as did the district court, that this action, as defined by the complaint, falls within the exception to that immunity provided by *Ex Parte Young*.

We decline to consider the other jurisdictional questions raised by the defendants at this stage of the proceedings. These issues are not "inextricably intertwined" with North Carolina's Eleventh Amendment immunity claim, nor is consideration of these issues "necessary to ensure meaningful review of the . . . immunity question." *Taylor v. Waters*, 81 F.3d 429, 437 (4th Cir. 1996); *see also Swint v. Chambers County Comm'n*, 514 U.S. 35, 50-51 (1995).

*AFFIRMED*