UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 09-1441

D.T.M., a minor child, by his mother Penny McCartney; E.C.,
a minor child, by his mother Selena McMillan; K.T., a minor
child, by her father, Greg Tipton, individually and on
behalf of all others similarly situated,

Plaintiffs - Appellees,

v.

LANIER M. CANSLER, Secretary of North Carolina Department of
Health and Human Services, in his official capacity,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern
District of North Carolina, at Greenville.  Malcolm J. Howard,
Senior District Judge.  (7:08-cv-00057-H)

Argued:  May 13, 2010                    Decided:  June 11, 2010

Before TRAXLER, Chief Judge, WILKINSON, Circuit Judge, and
Samuel G. WILSON, United States District Judge for the Western
District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Ronald Moore Marquette, NORTH CAROLINA DEPARTMENT OF
JUSTICE, Raleigh, North Carolina, for Appellant.  Douglas Stuart
Sea, LEGAL SERVICES OF SOUTHERN PIEDMONT, INC., Charlotte, North
Carolina, for Appellees.  **ON BRIEF:** Roy Cooper, North Carolina
Attorney General, Belinda A. Smith, Special Deputy Attorney
General, Tracy J. Hayes, Assistant Attorney General, NORTH

CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellant. Jane Perkins, Sarah Jane Somers, NATIONAL HEALTH LAW PROGRAM, Chapel Hill, North Carolina, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Lanier Cansler, the Secretary of the North Carolina Department of Health and Human Services ("HHS"), appeals the denial of his motion to dismiss this suit alleging that HHS has reduced or terminated Medicaid benefits received by plaintiffs and others in violation of the Due Process Clause and the Medicaid Act. The Secretary primarily argues that he is entitled to Eleventh Amendment immunity. Finding no error, we affirm.

I.

Medicaid is a cooperative federal-state program that assists states in providing medical services to the needy. States need not participate in Medicaid, but once they choose to do so, they must implement plans for providing medical assistance that comply with detailed federal standards. See 42 U.S.C.A. § 1396a (West 2003 & Supp. 2009). As is relevant here, state plans are required to "provide for granting an opportunity for a fair hearing . . . to any individual whose claim for medical assistance . . . is denied or is not acted upon with reasonable promptness." 42 U.S.C.A. § 1396a(a)(3). The state plans also must contain reasonable standards for determining individuals' eligibility. See 42 U.S.C.A. § 1396a(a)(17). In Medicaid parlance, "medical assistance" means payment of part or

3

all of the cost of care and services or provision of the services themselves.  See 42 U.S.C. § 1396d(a), as amended by the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 2304, 124 Stat. 119, 296 (Mar. 23, 2010).  These services generally include "health care, diagnostic services, treatment, and other measures . . . to correct or ameliorate defects and physical and mental illnesses" in children.  42 U.S.C.A. § 1396d(r)(5) (West Supp. 2009).

HHS is the state agency responsible for administering Medicaid programs in North Carolina.  See 42 U.S.C.A. § 1396a(a)(5).  In approximately 2006, HHS contracted with ValueOptions, Inc. ("VO"), to be HHS's statewide agent to administer behavioral health and developmental disability services for North Carolina's Medicaid program.  The three plaintiffs in this action are children who have been denied the level of medical assistance that they requested.  North Carolina requires preauthorization for medical assistance of the type Plaintiffs sought.  See 42 C.F.R. § 440.230(d) (2008) (providing that states "may place appropriate limits on a service based on . . . utilization control procedures").  If a preauthorization request is granted, Medicaid pays for the service for a certain length of time—90 days for Community Support Services and one year for the Community Alternatives Program for persons with mental retardation/developmental disabilities.  An applicant may

4

appeal an adverse decision to the North Carolina Office of Administrative Hearings ("OAH"), with or without first appealing informally to the HHS hearing office. During the pendency of a timely filed appeal, North Carolina authorizes the provision of services at the existing level of care.

Plaintiffs brought this suit under 42 U.S.C.A. § 1983 (West 2003), alleging that HHS violated their rights under the Medicaid Act and the Due Process Clause of the Fourteenth Amendment by arbitrarily and capriciously denying their requests for services, terminating or reducing their benefits without providing timely and adequate written notice and a fair hearing, and failing to ensure that their benefits continued while their appeals were pending. Plaintiffs' complaint requests declaratory relief as well as an order enjoining the Secretary, his agents, successors, and employees to

> (a) continue to provide behavioral health and developmental disability services to all persons who have been receiving them, until Defendant corrects the practices and procedures alleged herein;

> (b) prospectively reinstate behavioral health and developmental disability services previously provided to the named Plaintiffs and members of the Plaintiff class that were improperly reduced or terminated under the illegal practices and procedures alleged herein; [and]

> (c) comply with the Due Process Clause of the U.S. Constitution and the Medicaid Act.

J.A. 40.

5

After filing suit, Plaintiffs filed a motion in the district court to certify this suit as a class action. The Secretary opposed class certification and moved to dismiss for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(1), (6). Regarding subject-matter jurisdiction, the Secretary argued that he was entitled to Eleventh Amendment immunity, that the Plaintiffs lacked standing, and that the action had become moot. He also sought to dismiss because abstention under Younger v. Harris, 401 U.S. 37 (1971), was appropriate. The district court denied the motion to dismiss and denied the class-certification motion without prejudice to Plaintiffs' right to refile the motion after further discovery.

II.

On appeal, the Secretary argues that the district court erred in not dismissing the suit based on Eleventh Amendment immunity.[*] We disagree.

A district court order denying a motion to dismiss on the ground of Eleventh Amendment immunity is immediately appealable.

---

[*] The Secretary also maintains that the Plaintiffs lacked standing when they initiated this suit, and, alternatively, that the suit has become moot since it was filed. We decline to address those issues at this time. See Antrican v. Odom, 290 F.3d 178, 191 (4th Cir. 2002).

6

See Antrican v. Odom, 290 F.3d 178, 184 (4th Cir. 2002). We review such an order de novo. See CSX Transp., Inc. v. Bd. of Pub. Works, 138 F.3d 537, 541 (4th Cir. 1998).

Although the Eleventh Amendment generally bars individual suits against non-consenting states and state officers, an exception exists under the doctrine of Ex parte Young, 209 U.S. 123 (1908), for official capacity suits requesting prospective relief to achieve the officials' compliance with federal law. See Litman v. George Mason Univ., 186 F.3d 544, 549-50 (4th Cir. 1999). In such a case, a federal court may enjoin a state officer from engaging in future conduct in violation of federal law. See Antrican, 290 F.3d at 184. In determining whether the Ex parte Young exception applies, "a court need only conduct a 'straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" Verizon Md. Inc. v. Pub. Serv. Comm'n, 535 U.S. 635, 645 (2002) (alteration omitted).

The Secretary asserts three arguments against application of Ex parte Young: that Plaintiffs seek a compensatory, monetary remedy against the state rather than prospective relief against him; that Plaintiffs have not alleged an ongoing violation of federal law; and that the Secretary is not an appropriate party. We will address these arguments seriatim.

7

A.

In arguing that Plaintiffs do not seek prospective relief, the Secretary focuses on one part of the relief requested in the amended complaint, that being Plaintiffs' request to enjoin him, his agents, successors, and employees to prospectively reinstate services to the named Plaintiffs. However, the request for prospective reinstatement of benefits is precisely the type of relief that we recognized in Kimble v. Solomon, 599 F.2d 599, 605 (4th Cir. 1979), that plaintiffs may seek consistent with the Eleventh Amendment when they allege a state Medicaid agency's reduction of their benefits violated federal law. The Secretary argues that the facts alleged in the complaint do not legally entitle Plaintiffs to prospective reinstatement of benefits since the benefits allegedly denied were for a discrete period in the past. However, even assuming arguendo that the Secretary is correct on this point, the fact that Plaintiffs cannot prove entitlement to the prospective relief they seek does not mean that the relief they seek is not prospective. See Verizon, 535 U.S. at 646 ("[T]he inquiry into whether suit lies under Ex parte Young does not include an analysis of the merits of the claim."). And, in any event, even if the prospective reinstatement of benefits—the remedy on which the Secretary has focused—were not a prospective remedy, injunctive relief from

8

the continuation of HHS's allegedly illegal practices would be, and the Ex parte Young exception would apply.

B.

The Secretary's second argument, that Plaintiffs have not alleged an ongoing violation of federal law, is also a merits-based argument dressed in Eleventh Amendment clothing. The Secretary argues that to determine whether Plaintiffs allege an ongoing violation for Ex parte Young purposes, "this Court must determine what pre-deprivation and post-deprivation process is provided and whether it is constitutionally adequate." Brief of Appellant, at 45. However, to fall within the Ex parte Young exception, it is sufficient for Plaintiffs' suit to allege an ongoing violation of federal law; actually proving such an ongoing violation is unnecessary. See Verizon, 535 U.S. at 646; Burlington N. & Santa Fe Ry. Co. v. Vaughn, 509 F.3d 1085, 1092 (9th Cir. 2007); Deposit Ins. Agency v. Superintendent of Banks (In re Deposit Ins. Agency), 482 F.3d 612, 621 (2d Cir. 2007); McCarthy v. Hawkins, 381 F.3d 407, 415-17 (5th Cir. 2004).

C.

The Secretary finally maintains that his status as the official responsible for administering North Carolina's Medicaid program is not a sufficient connection to the complained-of actions to justify applying the Ex parte Young exception to him. We disagree.

The complaint makes clear that it is challenging the practices of the public agency. The Secretary, as the person responsible for assuring that the agency's decisions comply with federal law, was properly named as the defendant. See Ogden v. United States, 758 F.2d 1168, 1177 (7th Cir. 1985) ("[W]here injunctive, as opposed to monetary relief is sought, no 'direct and personal' involvement is required in order to hold high-level officials responsible for the actions of subordinates and to subject them to the equitable jurisdiction of the court."). And, the Ex parte Young exception was therefore properly applied to him. See Antrican, 290 F.3d at 188-89 (holding Ex parte Young exception was properly applied to state officials overseeing the North Carolina Medicaid program in suit alleging wrongful denial of Medicaid services).

## III.

In sum, because we conclude that the district court properly ruled that the Secretary was not entitled to Eleventh Amendment immunity, we affirm.

AFFIRMED